UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FELIPE QUINONES,** | 1:13-cv-1553-LJO-GSA |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO DISMISS (DOC. 13)** |
| v. | |
| **PATRICK R. DONAHOE,** | |
| Defendant. | |

# I. INTRODUCTION

On September 25, 2013 Felipe Quinones ("Plaintiff") filed a complaint against Patrick R. Donahoe, Postmaster General for the United States Postal Service ("USPS") for alleged violations of his civil rights. Doc 1. Plaintiff filed a first amended complaint ("the FAC") on February 26, 2014. Doc. 12. On April 28, 2014 USPS moved to dismiss Plaintiff's third cause of action in the FAC for *quid pro quo* religious harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") under Fed. R. Civ. P. 12(b)(6) on the ground it fails to state a claim on which the Court could grant Plaintiff relief. Doc. 13-1 at 2.

The relevant facts are straightforward.[1] Plaintiff was hired by USPS in 2000. Doc. 12, ¶ 8. Plaintiff was a part-time flexible ("PTF") clerk, which required being available to work on Saturdays. *Id.*, ¶ 8, 18. In 2005, Plaintiff became a Seventh-Day Adventist, and adopted the church's belief that Saturday is not a day for secular employment. Doc. 12, ¶ 9. Nonetheless, Plaintiff worked at USPS on Saturdays until September 2011. After September 3, 2011, Plaintiff refused to work on Saturdays on the

---

[1] These background facts are drawn exclusively from the FAC, the truth of which must be assumed for purposes of a Rule 12(b)(6) motion to dismiss.

ground it was against his religious beliefs as a Seventh-Day Adventist.

Plaintiff refused to report to work on Saturday, June 2, 2012. He was recorded as absent without leave and, per USPS's employee policies, he was afforded the opportunity to explain his absence in writing. When asked whether he would work on Saturday in the future, Plaintiff stated that he would not. Plaintiff was advised that he had violated USPS's rules and regulations, which required him to report on Saturdays if scheduled. He was warned that future violations would result in "more severe disciplinary action . . . including removal from [USPS]."

Plaintiff refused to report to work on Saturday, June 9, 2012. Plaintiff acknowledged that he had agreed to work on Saturdays when he was hired in 2000, but that he could no longer do so because of his conversion to Seventh-Day Adventism. USPS suspended Plaintiff for seven days.

Plaintiff refused to report to work on Saturday, June 16, 2012. USPS then suspended him for fourteen days and explained that he was expected to work on Saturdays in the future.

Plaintiff refused to report to work on Saturday, June 23, 2012. Because this was his fourth refusal to report, USPS issued a Notice of Proposed Removal. Approximately one month later, USPS issued a Notice of Removal for Plaintiff's "Failure to Follow Instructions/AWOL." USPS found that Plaintiff's refusal to work on Saturdays violated the agreed-upon terms of his employment and caused USPS undue hardship. Plaintiff's removal was effective September 21, 2012.

Plaintiff alleges USPS discriminated against him for his religious beliefs in violation of Title VII. In his third cause of action, Plaintiff alleges USPS's "conduct . . . constitutes *quid pro quo* harassment" in that it was "designed to alter Plaintiff's religious observance of the Sabbath, such that he would violate his religious beliefs, and consent to work on Saturdays in the future." Doc. 12, ¶ 144, 148.

USPS moves to dismiss this cause of action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. USPS asserts there is no claim for *quid pro quo* religious harassment in the Ninth Circuit and, moreover, there are no facts to suggest that USPS placed religious expectations on Plaintiff's employment. Doc. 13-1 at 1-2.

Plaintiff filed an opposition on May 27, 2014. Doc. 16. Plaintiff concedes the Ninth Circuit has

not applied "the theory of *quid pro quo* harassment in the religion context." *Id.* at 1. Nonetheless, Plaintiff argues "that *quid pro quo* harassment is a viable legal theory," and that USPS "has failed to explain why such religiously coercive conduct on the part of an employer should *not* be actionable as harassment." *Id.* at 2 (emphasis in original).

## II. <u>STANDARD OF DECISION</u>

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements'... are not entitled to be assumed true." *Iqbal*,

556 U.S. at 681. In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III. DISCUSSION

Plaintiff does not cite (and the Court is unaware of) any court within the Ninth Circuit to hold that *quid pro quo* religious harassment is a viable cause of action. In fact, Plaintiff characterizes his claim as "an issue of first impression in the Ninth Circuit, with no cases applying the theory of *quid pro quo* harassment in the religion context." Doc. 16 at 1. The Court declines to write or produce new law by finding that a claim for *quid pro quo* religious harassment exists. Accordingly, USPS's motion to dismiss Plaintiff's third cause of action is GRANTED WITHOUT LEAVE TO AMEND.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, USPS's motion to dismiss Plaintiff's third cause of action is GRANTED WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

Dated: **June 4, 2014**           **/s/ Lawrence J. O'Neill**
                                  UNITED STATES DISTRICT JUDGE